**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 19a0463n.06

**Case No. 18-5527**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| | | **FILED** |
| | | Sep 03, 2019 |
| | | DEBORAH S. HUNT, Clerk |

UNITED STATES OF AMERICA,       )
             )
    *Plaintiff-Appellee*,        )
             )     ON APPEAL FROM THE
v.                        )     UNITED STATES DISTRICT
             )     COURT FOR THE EASTERN
DEMETRIUS CATCHING,        )     DISTRICT OF KENTUCKY
             )
    *Defendant-Appellant*.      )
                                        OPINION

BEFORE:     COLE, Chief Judge; STRANCH and READLER, Circuit Judges.

COLE, Chief Judge. On April 11, 2018, Demetrius Catching and Tekyia Whitehead were subjected to two separate traffic stops by police officers in Harrodsburg, Kentucky. During the first stop, officers found marijuana in the back seat of the rental car that Catching was driving, as well as approximately $2,100 in cash in the console between the driver and passenger seats. During the second stop, officers found additional cash—the value of which is unclear, because the officers neither counted nor seized it—under the front passenger seat where Catching was sitting.

At the time of these stops, Catching was serving a term of supervised release for a prior conviction. The district court held a hearing to determine whether Catching had violated the terms of his supervised release, concluded that Catching had trafficked in less than eight ounces of marijuana in violation of Kentucky law, revoked his supervised release, and sentenced him to 60 months' imprisonment. Because the government did not prove by a preponderance of the evidence

that Catching possessed the marijuana in the rental car, we vacate the revocation of Catching's supervised release and remand the case for further proceedings.

## I. BACKGROUND

On November 10, 2012, Demetrius Catching pleaded guilty to distribution of cocaine and was sentenced to 60 months' imprisonment followed by four years of supervised release. Catching began his period of supervised release on September 13, 2017. During his supervised release, Catching was forbidden from possessing controlled substances or committing any crimes, and he was required to submit to periodic drug testing.

On April 11, 2018, Catching was subjected to two traffic stops in Harrodsburg, Kentucky. A woman named Tekyia Whitehead was with Catching during both stops. Whitehead testified that she had been involved in a domestic dispute in Harrodsburg in the early hours of the morning on April 11, 2018, and she called Catching for help. Shortly thereafter, Catching picked her up in a rental car. Whitehead testified that she had not rented the vehicle, and she did not know who had. The government presented no evidence to show who rented the vehicle.

Patrolman Timothy Wren of the Harrodsburg Police Department testified that, at approximately 12:38 a.m. on April 11, 2018, he stopped the rental car for driving 65 m.p.h. in violation of the 55 m.p.h. speed limit. Wren asked the driver of the vehicle, Catching, for identification, and Wren verified that Catching was on federal probation for prior trafficking offenses. Wren asked where Catching was heading, and he believed Catching's response—that Catching was heading to a friend's house nearby—was evasive. Wren contacted Deputy Sean Brown from the sheriff's office and requested a K-9. After Brown arrived with the K-9, Catching told Brown that a small amount of marijuana was in the back seat and that Whitehead had brought the marijuana into the vehicle with her.

During the search, the officers located two 2.5-ounce Planter's cashew containers on the floorboard below the back seat of the vehicle. Inside the first container was a clear plastic bag that held 50 buds of marijuana, which collectively weighed just over 22 grams, or approximately .75 ounces. Wren testified that he noticed marijuana residue and the odor of marijuana inside the second container, but he found no measurable quantity of marijuana. Additionally, the officers found approximately $2,100 in the console between the driver and passenger seat, and they found approximately $291 on Catching's person. Wren testified that he found no marijuana on Catching's person.

After the first stop, Catching was arrested on a charge of trafficking in less than eight ounces of marijuana, though prosecutors never ultimately pursued these charges further. While Catching was detained upon arrest, Whitehead drove the rental car to her sister's house in Danville, Kentucky. Catching was released from jail later that day, and he met Whitehead at her sister's house in Danville so that Whitehead and Catching could drive back to Lexington. During the drive to Lexington, Corporal Derek Patterson stopped Whitehead and Catching after observing the vehicle traveling 74 m.p.h. in a 55-m.p.h. speed zone.

At the time of the second stop, Whitehead was driving the rental car, and Catching was in the passenger seat. Patterson noticed the smell of marijuana as he approached the vehicle. Patterson told Whitehead and Catching he smelled marijuana and asked if there was any marijuana in the vehicle. Whitehead told Patterson that no marijuana was in the vehicle at that time, but she admitted she had been smoking in the vehicle earlier that day. Whitehead also told Patterson that she had a large sum of money in the vehicle, and she explained that she was taking the money to her father because she did not believe in banks.

Patterson searched the vehicle and found the money in question under the front passenger seat where Catching had been sitting at the time of the second stop. Patterson testified that he found a "large amount of money, cash, vacuum sealed," and a "Crown Royal bag with a lot of money in it as well, cash." (Hr'g Tr., R. 85, PageID 303.) But Patterson never counted the money in the Crown Royal bag, nor did he open the vacuum sealed bag to count the money. Part of the reason Patterson did not count the money is that the commonwealth's attorney instructed him not to seize it, because without the presence of drugs at the time of the second stop, the commonwealth's attorney did not believe there was a sufficient nexus between the cash and any illicit activity to warrant seizure. At the conclusion of the second stop, Whitehead and Catching were released with only a warning for speeding.

On April 16, 2018, the Probation Office for the Eastern District of Kentucky issued a Supervised Release Violation Report, which concluded that Catching had violated the terms of his supervised release by trafficking in less than eight ounces of marijuana, which is a Class D felony under Kentucky law. The report also indicated that on both March 13 and April 12, 2018, Catching had submitted negative urinalysis as required by the terms of his supervised release, indicating that there were no drugs in his system on those dates.

The district court held a hearing to determine whether Catching had committed a supervised release violation. The most hotly debated question at the hearing was *whose* marijuana was found in the rental car during the first stop. Neither the plastic bag nor the cashew containers were tested for fingerprints, so no physical evidence linked Catching, Whitehead, or any third party to the marijuana. Wren testified that Catching was the first person to notify the officers that marijuana was in the vehicle, but Wren also stated that Catching told the officers he had known the drugs were in the vehicle because Whitehead put them there. Catching was consistently

"adamant that it was not his marijuana" and that the marijuana was Whitehead's. (Hr'g Tr., R. 85, PageID 294, 298.) Whitehead, on the other hand, took inconsistent positions about whose marijuana was found in the vehicle. After the officers found the marijuana in the back seat of the vehicle, Whitehead repeatedly told the officers that she smokes marijuana and that the drugs were hers. Subsequently, Whitehead signed an affidavit in which she again stated the drugs were hers. But at the hearing, after Whitehead had been charged with trafficking marijuana, she recanted that statement and testified instead that the drugs were not hers, but she thought claiming the drugs were hers had been the "right thing to do," because Catching had helped her get out of a bad domestic dispute. (*Id.* at PageID 328–30.) At the hearing, Whitehead never indicated that the drugs belonged to Catching or to a third party.

Conflicting testimony was also provided regarding the significance of the quantity of the marijuana found in the vehicle. Wren testified that, in his professional experience, 22 grams of marijuana is a quantity that "definitely" indicates trafficking rather than personal use. (*Id.* at PageID 283–84.) Whitehead testified that, in her experience as a consumer of marijuana who "smoke[s] so much" that she "couldn't keep up" with how much marijuana she regularly uses, 22 grams is a quantity that is consistent with personal use, and she had previously possessed that much for personal use. (*Id.* at PageID 347.)

Based upon the facts as described above, the district court found that the government had met its burden to establish that Catching had trafficked in marijuana in violation of the terms of his supervised release. The district court revoked Catching's supervised release and imposed a sentence of 60 months' imprisonment. Catching now appeals.

## II. ANALYSIS

Because supervised release violations that involve possession of a controlled substance require revocation of supervised release, 18 U.S.C. § 3583(g), the only question for this court is whether the district court erred in finding that Catching trafficked in less than eight ounces in marijuana—a mixed question of law and fact, which we review de novo. *Razavi v. Comm'r of Internal Revenue*, 74 F.3d 125, 127 (6th Cir. 1996).

"In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release." *United States v. Lowenstein*, 108 F.3d 80, 85–86 (6th Cir. 1997) (citing *United States v. Stephenson*, 928 F.2d 728, 733 (6th Cir. 1991)); *accord* 18 U.S.C. § 3583(e)(3). "The preponderance standard requires a lesser quantum of proof and enables the trier of fact to make a determination of guilt that it could not make if the standard were that at trial, i.e., guilt beyond a reasonable doubt," *United States v. Thompson*, 314 F. App'x 797, 799 (6th Cir. 2008); accordingly, "revocation hearings are more flexible than a criminal trial." *Stephenson*, 928 F.2d at 732. For example, a judge may "find that the defendant has violated a condition of his supervised release based on his 'own finding of new criminal conduct even if (1) the [defendant] is later acquitted of all charges arising from the same conduct, (2) all criminal charges arising from the same conduct are dismissed prior to trial, or (3) the [defendant's] criminal conviction is subsequently overturned.'" *Id.* (alterations in original) (quoting *Taylor v. U.S. Parole Comm'n*, 734 F.2d 1152, 1155 (6th Cir. 1984)).

Still, the preponderance standard requires the government to offer evidence that proves the defendant more likely than not committed the offense in question. *United States v. Moses*, 289 F.3d 847, 852 (6th Cir. 2002). It is "well-settled" under Kentucky law that a factfinder can "make reasonable inferences from the evidence" provided in reaching its conclusions. *Blades v.*

*Commonwealth*, 957 S.W.2d 246, 250 (Ky. 1997). But "[m]ere speculative inferences are never allowable, and cannot be regarded as evidence." *Goodman v. Simonds*, 61 U.S. 343, 360 (1857). Inferences are "legally tenable only if a reasonable jury could find that" the party bearing the burden *proved* them by a preponderance of the evidence. *Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 880 F.3d 791, 801 (6th Cir. 2018); *see also Cold Metal Process Co. v. McLouth Steel Corp.*, 126 F.2d 185, 188 (6th Cir. 1942) ("An inference is but a reasonable deduction and conclusion from proven facts."). If "pure speculation is necessary in order to infer from the evidence" the requisite elements of an offense, then "the government has failed to prove by a preponderance of the evidence" that the defendant committed the offense in question. *United States v. Pryor*, 19 F. App'x 234, 237–38 (6th Cir. 2001).

Under Kentucky law, "[a] person is guilty of trafficking in marijuana when he knowingly and unlawfully traffics in marijuana." Ky. Rev. Stat. Ann. § 218A.1421. The definition of "[t]raffic" includes "possess[ing] with intent to . . . sell a controlled substance." Ky. Rev. Stat. Ann. § 218A.010(55). Thus, to revoke Catching's supervised release, the court had to find the government proved by a preponderance of the evidence that Catching (1) possessed marijuana, (2) knew he possessed marijuana, and (3) either sold or intended to sell the marijuana. *See Juarez v. Commonwealth*, No. 2016-CA-000153-MR, 2018 WL 1787165, at *6 (Ky. Ct. App. Apr. 13, 2018); *Riley v. Commonwealth*, No. 2007-SC-000868-MR, 2009 WL 1451931, at *3 (Ky. May 21, 2009). Kentucky's penal code does not define "possession," but the Kentucky Supreme Court has held that "'possession' for purposes of KRS Chapter 218A includes both actual and constructive possession." *Pate v. Commonwealth*, 134 S.W.3d 593, 598 (Ky. 2004), *as modified* (July 23, 2004).

The district court concluded that Catching had actually possessed the marijuana, and that even if it accepted Catching's argument that he had not actually possessed the drugs, Catching had constructively possessed the marijuana. To prove that a defendant actually possessed drugs, the government must establish that the defendant had "direct physical control" over the drugs when the police arrested him or that he had been seen with the drugs prior to the arrest. *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009). Here, the government provided no such evidence, so the district court's finding that Catching actually possessed the marijuana was clear error. Thus, the central question in this case is whether the district court clearly erred in finding that Catching constructively possessed the marijuana.

The government must make two showings to prove that a defendant constructively possessed drugs: first, that the defendant exercised dominion or control over the contraband, and second, that the defendant had specific intent to possess the drugs. *Bailey*, 553 F.3d at 945; *Beaty v. Commonwealth*, 125 S.W.3d 196, 204 (Ky. 2003), *abrogated on other grounds by Geary v. Commonwealth*, 490 S.W.3d 354, 358 (Ky. 2016). Because the government failed to show that Catching exercised dominion or control over the marijuana, we discuss only that requirement here.

Under Kentucky law, the first element of constructive possession requires the government to "present evidence which establishes that the contraband was subject to the defendant's dominion and control." *Pate*, 134 S.W.3d at 598–99; *see also Beaty*, 125 S.W.3d at 203; *Leavell v. Commonwealth*, 737 S.W.2d 695, 697 (Ky. 1987). Kentucky's focus on dominion and control mirrors this court's constructive possession analysis. *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973) ("Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others."), *abrogated on other*

*grounds by Scarborough v. United States*, 461 U.S. 563 (1977). Accordingly, we analyze constructive possession using case law from both this court and Kentucky courts.

Kentucky courts and this court have drawn lines regarding what amounts to dominion or control. First and foremost, "[p]hysical proximity to drugs, or mere presence in an area where drugs are found, is not sufficient" to establish dominion or control. *United States v. White*, 932 F.2d 588, 589 (6th Cir. 1991). Nor is "[m]ere presence on the scene plus association with illegal possessors." *United States v. Birmley*, 529 F.2d 103, 107 (6th Cir. 1976).

Furthermore, although the person who owns "a motor vehicle in which contraband is concealed . . . is deemed to possess the contraband," *Leavell*, 737 S.W.2d at 697, "nonexclusive possession does not establish 'dominion over the premises' sufficient to show constructive possession." *Bailey*, 553 F.3d at 944 n.3. This position accords with the general consensus across state and federal courts that, "where the defendant is in nonexclusive possession of premises on which [illicit contraband] [is] found, it cannot be inferred that he knew of the presence of such [contraband] and had control of [it], unless there are other incriminating statements or circumstances tending to buttress such an inference." *Id.* (alterations in original). To be clear, control over the contraband does "not need to be exclusive" to establish constructive possession. *Pate*, 134 S.W.3d at 599. But exclusive control does matter when the government can establish dominion or control only over the *place where the drugs are found* without evidence of control over the drugs themselves.

Especially relevant here, this court has found that the fact that a defendant drove a vehicle in which contraband was found is insufficient, by itself, to establish constructive possession. *Bailey*, 553 F.3d at 946 (finding no constructive possession where "the government did not advance any evidence establishing constructive possession beyond the fact that Bailey drove the

car in which the gun was found," noting that the defendant "did not own the car he was driving" and the government "could not show that Bailey's fingerprints were on the gun"); *see also United States v. Littrell*, 574 F.2d 828, 834–35 (5th Cir. 1978) (finding that driving the vehicle was insufficient to establish constructive possession where there was "no evidence that [the defendant] owned the vehicle or that he was aware of the cocaine's presence in the glove compartment"). The general rule embraced by the Kentucky Supreme Court accords with our decision in *Bailey*, and we have not identified any published opinion from a Kentucky court that concluded driving was independently sufficient to establish constructive possession over contraband found in a vehicle. *See Dixon v. Commonwealth*, 149 S.W.3d 426, 429 (Ky. 2004) (finding that the "general rule" is that, "[w]here immediate and exclusive possession of an automobile . . . is shown, the inference is authorized that the owner of such property is the owner of what is contained therein" (quoting *Chambers v. State*, 293 S.E.2d 20, 21 (Ga. Ct. App. 1982))); *see also Deboy v. Commonwealth*, 214 S.W.3d 926, 930 (Ky. Ct. App. 2007) ("Here, the evidence was sufficient to support the conviction based on Deboy's constructive possession of the handgun. Deboy was the owner and operator of the vehicle, and the handgun was found under the seat where he had been sitting.").

Importantly, "other incriminating evidence, coupled with presence . . . , will serve to tip the scale in favor of" finding that the defendant exercised dominion or control. *Birmley*, 529 F.2d at 108. But this "other incriminating evidence" must provide some nexus between the defendant and the object he allegedly possessed in order to establish constructive possession, such as witness testimony that the defendant had been seen with the contraband minutes before being stopped by police, *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007); "a police officer's testimony that he or she saw the defendant bend down to conceal something beneath the seat," *Bailey*,

553 F.3d at 948; or "the fact that the defendant not only drove the car but also had the car registered in his name," *id.* at 949.

Other factors that Kentucky courts have considered in the context of constructive possession of drugs found in a vehicle include whether "the [contraband] was found in an area in the car next to where [the defendant] had previously been sitting, i.e., in an area within his immediate control," whether other occupants of the vehicle "disavowed possession of the drugs and claimed that they belonged to [the defendant]," whether the defendant admitted he had been using drugs, and whether officers had received complaints that the defendant was trafficking in drugs. *Burnett v. Commonwealth*, 31 S.W.3d 878, 881 (Ky. 2000), *overruled on other grounds by Travis v. Commonwealth*, 327 S.W.3d 456, 463 (Ky. 2010); *Paul v. Commonwealth*, 765 S.W.2d 24, 26 (Ky. 1988); *McLevain v. Commonwealth*, No. 2004-CA-001510-MR, 2005 WL 1846349 (Ky. Ct. App. Aug. 5, 2005). Again, each of these factors provides some nexus between the defendant and the drugs beyond the defendant's mere presence in the vehicle.

In contrast, the government did not prove that Catching had dominion and control over the marijuana in this case. The testimony and evidence provided at the hearing make clear that Catching had non-exclusive possession of the vehicle for at least two reasons. First, Whitehead and Patterson both testified that Catching was in a rental car at the time of both stops, and there was no testimony or evidence offered to prove that Catching was the person who rented the vehicle. Second, the driver of the vehicle was different at each stop: the first time, Catching was driving; the second time, Whitehead was driving.

The evidence presented at the sentencing hearing showed that Catching was driving the rental car at the time of the first stop, when the marijuana was found in the vehicle. But "[t]he mere fact that [Catching] was driving the car in which the police found the [marijuana] is not

enough to establish dominion over the premises and thereby dominion and control over the [marijuana]." *Bailey*, 553 F.3d at 947. Our opinion in *Bailey* is especially instructive, because the facts in *Bailey* were even more suggestive of possession than those here: there, the defendant was the driver of the vehicle in which the contraband was found, *and* the contraband was found underneath the driver's seat where the defendant had been sitting, *id.* at 945–46, whereas in this case the marijuana was found on the floor of the back seat of the vehicle in a cashew container.

None of the other testimony or evidence provided at the sentencing hearing constitutes the type of "other incriminating evidence" that would compensate for the missing nexus between the criminal activity and the defendant. *Birmley*, 529 F.2d at 108. First, the officers' observations regarding the quantity of the marijuana and the presence of the empty cashew container cannot support an inference of constructive possession, because they do not establish any nexus between the contraband and the defendant. For example, in *Bailey*, the defendant had cocaine on his person at the time he was stopped, but his possession of cocaine did not provide the necessary "other incriminating evidence" to support a finding that he constructively possessed the gun beneath his seat. 553 F.3d at 946. Similarly, the quantity of the marijuana and the presence of the empty cashew container may be evidence of criminal activity, but they fail to provide any additional connection between the marijuana and Catching that would tend to prove *possession*. Thus, this evidence cannot compensate for the missing nexus between the criminal activity and the defendant.

Additionally, while "large sum[s] of cash" can be indicative of "some relationship with illegal drugs," *United States v. $67,220.00 in U.S. Currency*, 957 F.2d 280, 285 (6th Cir. 1992), the $2,100 found in the console and the unknown sum of money under the passenger's seat provide no additional nexus between Catching and the marijuana, because they suffer from the same flaw

as the marijuana itself—there is no evidence beyond mere proximity to indicate that Catching possessed these sums of cash.

Nor can Whitehead's testimony overcome the missing nexus. In cases where another passenger or a victim testifies that the defendant possessed the contraband in question, such testimony can provide the missing nexus. *Arnold*, 486 F.3d at 183; *Burnett*, 31 S.W.3d at 880–81. But Whitehead never provided that testimony. At best, Whitehead's testimony at the hearing was that the drugs did not belong to her, but she did not know where they came from. At worst, Whitehead's previous statements indicated that the drugs were in fact hers. Even crediting Whitehead's denial that the drugs were hers, as the district court did, the question we must answer is whether such a denial is sufficient proof to indicate that the driver constructively possessed the drugs, even where the passenger does not implicate the driver as the person who owned the drugs. Our holding in *United States v. Newsom*, 452 F.3d 593 (6th Cir. 2006), indicates that the answer to this question must be no. In *Newsom*, the defendant was the only person in the vehicle, and we still found that the fact that the defendant was driving the vehicle and a gun was found under his seat was "insufficient proof of constructive possession" of the gun. *Id.* at 609. Ruling out the other passenger in the vehicle cannot be sufficient to show constructive possession if being the only person in the vehicle is insufficient to show constructive possession.

Finally, the fact that Catching passed his drug tests does not provide any proof that he possessed the marijuana. Assuming that he possessed the marijuana, it might have been reasonable for the district court to find that the most likely reason a person would possess drugs without consuming them is for trafficking. But the court could not assume that Catching possessed the marijuana unless the government presented sufficient evidence to *prove* possession. Because there was insufficient evidence that Catching possessed the drugs, his clean drug test could not support

the inference that he possessed the drugs; to the extent any inference can be drawn from a clean drug test about the question of *possession*, it would be that Catching did not possess the drugs.

Without any nexus between Catching and the marijuana other than the fact that he was driving the rental car where the marijuana was found, the government's contention that Catching possessed the drugs amounts to "mere argument, not evidence." *Bills v. Aseltine*, 958 F.2d 697, 708 (6th Cir. 1992). Thus, we find that the government failed to prove that Catching constructively possessed the marijuana.

## III. CONCLUSION

For the foregoing reasons, we vacate the sentence and revocation of supervised release, and we remand the case to the district court with instructions to reinstate Catching's term of supervised release.

**CHAD A. READLER, Circuit Judge, Dissenting.** All agree that whether Catching constructively possessed the drugs in the car he was driving is a question of Kentucky law. From that shared starting point, we should likewise agree that, as a matter of Kentucky law, the record below amply supports a finding of constructive possession.

In Kentucky, proof that a defendant was in possession and control of a vehicle is sufficient to support a conviction for constructive possession of the vehicle's contents. *Dixon v. Commonwealth*, 149 S.W.3d 426, 429 (Ky. 2004) (citation omitted). That is true when the defendant neither owns nor is the exclusive user of the car. It is true when the defendant is not alone in the vehicle when apprehended. And it is true even when the defendant has never personally driven or entered the car.

*Lack Of Ownership Or Exclusive Use Of The Vehicle.* In *McCloud v. Commonwealth*, 286 S.W.3d 780 (Ky. 2009), a police officer saw McCloud drive up to a shopping center in a car. *Id.* at 783. The officer knew McCloud did not own the car he was driving, as the officer had previously arrested the car's owner. *Id.* A woman got into the car and purchased drugs from McCloud. *Id.* The officer intervened, placed McCloud and the woman under arrest, and, upon searching the vehicle, discovered a loaded handgun under the driver's seat. *Id.* The gun's presence in the vehicle, according to the Kentucky Supreme Court, was sufficient to prove McCloud's constructive possession beyond a reasonable doubt. *Id.* at 790.

*More Than One Occupant Of The Vehicle.* In *Deboy v. Commonwealth*, 214 S.W.3d 926 (Ky. App. 2007), Deboy was convicted of felonious possession of a firearm after a search of a car he was driving uncovered a gun under the driver's seat. *Id.* at 927–28. Though there were two passengers in the car, the Kentucky appellate court affirmed Deboy's conviction, stating that "[t]he

contents of an automobile are presumed to be those of one who operates it and is in charge of it . . . ." *Id.* at 930 (internal quotation marks and citation omitted).

*Lack Of Presence In Or Immediate Control Of The Vehicle.* In *Leavell v. Commonwealth*, 737 S.W.2d 695 (Ky. 1987), Leavell visited a hotel to purchase drugs in the room of a hotel guest. While in the room, Leavell exchanged a suitcase full of money for the ignition key to a car in the parking lot. *Id.* at 696. A security guard overheard the exchange and apprehended Leavell at the hotel entrance. *Id.* The guard recovered the ignition key and found a second key—for the trunk and car doors—in the guest's hotel room. Inside the trunk, officers discovered ninety pounds of marijuana. *Id.* The Kentucky Supreme Court found sufficient evidence that Leavell constructively possessed those drugs despite the fact that Leavell had never driven, entered, or even been close to the car, and even though the key in his possession could only start the car, not actually open the doors or the trunk of the car. *Id.* at 697.

The majority maintains that no Kentucky case stands for the proposition that driving a vehicle is sufficient to establish constructive possession of its contents. These cases say otherwise. But even accepting the majority's proposition, Catching was not merely driving the vehicle. He was also aware marijuana was inside. Indeed, he told a law enforcement officer as much when a K-9 unit arrived to inspect the vehicle. Nor is Catching a stranger to drug offenses. The supervised release violation at issue here is similar to Catching's prior drug trafficking offense, something the district court could fairly consider in a revocation proceeding. *United States v. Givens*, 786 F.3d 470, 476 (6th Cir. 2015); Fed R. Evid. 1101(d)(3).

If not Catching, who else could have owned the marijuana? The majority does not say, and there is no plausible theory that points to another owner. Not Whitehead, the passenger riding with Catching. She testified that she did not put the drugs in the car. She also testified that the

large amount of money in the car during the second stop was not hers. The district court credited her testimony, findings we must accept, absent clear error. *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 n.3 (6th Cir. 2003) (citing *Sandler v. AII Acquisition Corp., Inc.,* 954 F.2d 382, 384–85 (6th Cir. 1992)). All of this together shows why the district court was correct to find a supervised release violation, especially when the government needed to show as much only by a preponderance of the evidence. *Givens*, 786 F.3d at 471 (quoting 18 U.S.C. § 3583(e)(3)).

The majority takes a different path, one that, to my eye, has at least three unusual features. One, their cited authority relies on federal (rather than Kentucky) law in finding insufficient evidence of constructive possession. *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009); *United States v. White*, 932 F.2d 588, 589 (6th Cir. 1991); *United States v. Birmley*, 529 F.2d 103, 107 (6th Cir. 1976) (all applying federal standards in reviewing federal criminal convictions involving constructive possession).

Two, the majority relies on cases requiring the government to meet the beyond-a-reasonable-doubt standard, when we are to apply only the preponderance standard. *See, e.g.*, *Bailey*, 553 F.3d at 947 ("Although the sufficiency-of-the-evidence standard is highly deferential to the jury, we cannot let this deference blind us on review to the government's burden to prove guilt beyond a reasonable doubt."); *see also White*, 932 F.2d at 589. Those standards are miles apart, and for good reason. *In re Winship*, 397 U.S. 358, 364 (1970) ("Due process commands that no man shall lose his liberty unless the Government has borne the burden of . . . convincing the factfinder of his guilt. To this end, the reasonable-doubt standard is indispensable, for it impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.") (internal quotation marks and citations omitted).

Three, the majority appears to give no deference to the district court's factual findings, at the heart of this case. Yes, constructive possession is a mixed question of law and fact that is subject to de novo review. *Razavi v. Comm'r of Internal Revenue*, 74 F.3d 125, 127 (6th Cir. 1996). But that is not license to disregard the district court's underlying factual findings. Those findings, we have repeatedly held, are subject only to clear error review. *Nationwide*, 330 F.3d at 846 n.3 (citing *Sandler,* 954 F.2d at 384–85). And those findings, coupled with the numerous holdings of Kentucky courts finding constructive possession in similar circumstances—and under the more daunting beyond-a-reasonable-doubt standard—lead me to conclude that the district court did not err. For these reasons, I respectfully **DISSENT**.